UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

Eastern District of Kentucky
FILED
MAY 2 6 2005
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 03-241-KSF

MARVIN T. PENNINGTON                                                            PETITIONER


V.                          **OPINION AND ORDER**


JOHN MOTLEY, Warden                                                             RESPONDENT

\* \* \* \* \* \* \* \* \* \* \* \*

On June 4, 2003, petitioner Marvin T. Pennington filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 [DE #1]. On June 25, 2003, the respondent filed an answer to the petitioner's habeas petition and moved to dismiss [DE #4]. Consistent with local practice, this matter was referred to the United States Magistrate Judge for consideration pursuant to 28 U.S.C. §636(b).

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On February 6, 1995, a grand jury of the Fayette Circuit Court returned a nine-count indictment against petitioner. Counts 1 and 2 thereof charged petitioner with kidnaping S.S. on or about January 29, 1995; Counts 3 and 4 charged petitioner with First Degree Rape by engaging in sexual intercourse with S.S. through the use of forcible compulsion on or about January 29, 1995; Counts 5 and 6 charged petitioner with First Degree Sodomy by engaging in deviate sexual intercourse with S.S. through the use of forcible compulsion on or about January 29, 1995; Count 7 charged petitioner with First Degree Burglary by unlawfully entering and/or remaining in the residence of S.S. on or about January 29, 2995; Count 8 charged petitioner with

Second Degree Stalking upon S.S.; and Count 9 charged petitioner with being a felon in possession of a firearm.

Petitioner pled not guilty to these charges, and this matter proceeded to trial on March 29, 1995, on Counts 1 through 8. On March 31, 1995, the jury found petitioner guilty on Counts 1 through 8 and recommended a total sentence of 105 years. On June 2, 1995, the trial court imposed a 10-year sentence on Count 1, a 15-year sentence on Count 2, 20-year sentences on Counts 3, 4, 5, and 6, a 3-month sentence on Count 7, and a 6-month sentence on Count 8. The trial court ordered that the sentences on Counts 1, 2, 3, 4, 5, and 6 run consecutively to each other and the sentences on Counts 7 and 8 run concurrently with the sentences on Counts 1-6, for a total of 105 years.

Petitioner appealed his conviction to the Kentucky Supreme Court. In an unpublished opinion rendered on September 3, 1998, the Kentucky Supreme Court affirmed petitioner's conviction (A181-188).

Thereafter, on October 19, 1998, petitioner, by counsel, moved the trial court, pursuant to RCr 11.42, to vacate, set aside, or correct his sentence (A197-335). Pursuant to the terms of an order entered April 6, 2001, the trial court denied petitioner's RCr 11.42 motion (A257-259).

Petitioner appealed the denial of his RCr 11.42 motion to the Kentucky Court of Appeals. In an unpublished opinion rendered on November 1, 2002, the Kentucky Court of Appeals affirmed the denial of Petitioner's RCr 11.42 motion (A259-270). On May 13, 2003, the Kentucky Supreme Court denied petitioner's motion for discretionary review of the foregoing decision of the Kentucky Court of Appeals rendered on November 1, 2002.

Petitioner filed his federal habeas petition on June 4, 2003.

## II. MAGISTRATE JUDGE'S PROPOSED FINDINGS OF FACT & RECOMMENDATION

The Magistrate Judge filed his proposed findings of fact and recommendation on February 22, 2005 [DE # 13], recommending that the petition be denied. The Magistrate Judge concluded that the petitioner had not established that the review of his claim by the Kentucky courts resulted in a decision that (a) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (b) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Specifically, in regard to the ineffective assistance of counsel claim, after reviewing the trial court's analysis of petitioner's RCr 11.42 motion and the decision of the Kentucky Court of Appeals, the Magistrate Judge concluded that the trial court's ruling on each of petitioner's separate claims of ineffective assistance of counsel was legally sound and that the Kentucky Court of Appeals correctly analyzed petitioner's claims of ineffective assistance of counsel when it reviewed this matter on appeal.

Next, petitioner claims that he did not receive effective assistance of counsel because counsel failed to object to the Commonwealth's representations as to the contents of a videotape. The Magistrate Judge found that the petitioner's concerns about the videotape were fully and correctly addressed by the trial court.

Third, petitioner claims his conviction was obtained by a violation of the privilege against self-incrimination because his counsel did not object to questioning of petitioner by the Commonwealth concerning his failure to disclose the videotape prior to its seizure during the execution of the search warrant. As with petitioner's other claims for ineffective assistance of

3

counsel, the Magistrate Judge determined that the trial court had fully and correctly addressed this issue.

Last, as for petitioner's claims that the prosecutor engaged in misconduct by making improper argument during closing, again, the Magistrate Judge found that this issue was fully and correctly addressed by the trial court.

On March 7, 2005, the petitioner filed objections to the Magistrate Judge's proposed findings of fact and recommendation. This Court must make a *de novo* determination of those portions of the Magistrate Judge's proposed findings of fact and recommendation to which objection is made. *See* 28 U.S.C. § 636(b)(1)(C).

### III. ANALYSIS

As an initial matter, the Magistrate Judge correctly noted that the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 prohibits federal courts from granting writs of habeas corpus on claims previously adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See* 28 U.S.C. § 2254(d)(1) and (d)(2). *See also Harris v. Stovall*, 212 F.3d 940, 942-43 (6th Cir. 2000); *Bowling v. Parker*, 138 F.Supp.2d 821, 844-45 (E.D. Ky. 2001). With this standard in mind, the Court will review petitioner's objections to the Magistrate Judge's recommendations.

4

Petitioner's objections pertain to his claim that he had ineffective assistance of counsel. A petitioner is only entitled to relief if the state court's decision rejecting the ineffective assistance of counsel claim was either contrary to, or involved an unreasonable application of, the established law of *Strickland v. Williams*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Williams v. Taylor*, 529 U.S. at 391, 120 S.Ct. 1495. In *Strickland*, the Supreme Court laid out two components which a claimant must establish to prevail on a claim for ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687, 104 S.Ct. 2052. The Court will review each of petitioner's objections to the Magistrate's findings and recommendation regarding his claims that he was not afforded effective assistance of counsel.

### A. The Videotape

First, petitioner objects to the Magistrate's conclusion that petitioner's counsel rendered effective assistance of counsel with respect to a videotape that was introduced as evidence at trial. The videotape was a copy, made by the Commonwealth, of a 8-millimeter tape found at the petitioner's residence. The victim testified that petitioner had left a videotape at her residence the day of the crime, however, the Commonwealth did not recover the actual videotape left by petitioner for S.S. Instead, it recovered the 8-millimeter tape from petitioner's residence and subsequently made a videotape copy of it. The Commonwealth alleged that the contents of the

8-millimeter tape was the same as the contents on the videotape given to S.S. The district court described the videotape as follows:

> A video tape was found on search of Pennington's residence. . . . The tape in its entirety included the portion directed toward the victim, a funeral scene, Arlington Cemetery, and scenes at his grandmother's house. Pennington asserts that the funeral scene was not included on the original tape sent to the victim, yet was shown to the jury while the rest of the tape was not. Pennington's Affidavit states that the 8 mm tape found by police was a tape left in his camcorder that he had taped over to produce the VCR tape he copied and sent to the victim. He concludes that had the jury been shown the entire tape, his testimony regarding the omission of the funeral scent on the victim's tape would be supported, and the jury could have concluded the funeral was not on the original tape, thus is not evidence of his state of mind.

*See* A376.

Petitioner's objections revolve around whether the funeral scene was on the videotape given to S.S. Petitioner notes that at a bond hearing, the trial court stated that it was apparent that the funeral scene was on the tape delivered to S.S. because petitioner had recorded it at fast-forward speed so all parts could be seen. In fact, the funeral scene was not recorded at fast-forward speed on the 8-millimeter tape, but was only in fast-forward speed on the videotape copy made by the Commonwealth. Petitioner claims that the Commonwealth knew that petitioner did not record the funeral at fast-forward speed, but failed to correct the trial court's misunderstanding. Also, petitioner alleges that his counsel should have watched the videotape prior to the bond hearing and objected to the trial court's finding.

As previously stated, petitioner will only be able to prevail on his objections if he establishes that the state court decisions resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable

6

determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. §2254(d)(1) and (d)(2).

First, petitioner claims that he was prejudiced by his attorneys failing to bring to the trial court's attention during the bond hearing that portions of the videotape had been recorded at fast-forward speed, when in fact those portions were not at a fast-forward speed on the original 8-millimeter. Petitioner has not alleged that his attorneys had an opportunity to view either the videotape made by the Commonwealth or the 8-millimeter tape prior to the bond hearing. Moreover, it is not clear if petitioner's counsel even had knowledge of these tapes prior to the bond hearing.

Even if petitioner's counsel failed to object to the contents of the videotape at the bond hearing, petitioner's counsel later filed a motion to suppress the videotape. Petitioner does not assert that the trial court relied upon a fast-forwarded videotape when it ruled on petitioner's motion for suppression. Therefore, petitioner has not established that the trial court's decision to admit the videotape into evidence hinged on a fast-forwarded version of the tape. On direct appeal, the Kentucky Supreme Court found that the trial court was within its discretion when it admitted the videotape.[1] (A183).

The copy of the videotape provided to the jury and to the state courts and this Court on appeal also did not include a fast-forwarded portion. Thus, even if defense counsel's performance was deficient in failing to object to the fast-forwarded portion of the videotape during the bond hearing, there is no evidence that during any other portion of these proceedings,

---

[1] The Kentucky Supreme Court found that the videotape was introduced not to show petitioner's character, but rather to show his state of mind. The Supreme Court stated, "A review of the videotape reveals that much about appellant's mental processes. Threatening remarks, pain, anger, and jealousy abound." (A184).

7

the Commonwealth relied on a fast-forwarded videotape. Therefore, petitioner has failed to show how he was prejudiced by the Commonwealth introducing a fast-forwarded videotape during the bond hearing.

Second, the jury was shown only portions of the tape, including the funeral scene. Petitioner argues that his counsel should have objected to the jury viewing only portions of the tape and not the entire tape. However, the petitioner testified at trial that the funeral scene was not on the tape given to S.S., which was not refuted. (A377). The trial court concluded after the RCr 11.42 hearing that, "There are two possible constructions regarding the funeral scene as seen by the jury. The defendant may have deliberately included the funeral scene for the victim to see, or he may have inadvertently made a tape over a tape that happened to have a funeral scene on it, which was not on the copy sent to the victim." (A377). Since both theories were presented to the jury, the trial court concluded that the evidence was properly admitted to permit the jury to determine who or what they believed. (A377). The trial court found that had the tape been shown in its entirety or had the funeral scene been omitted, there is no reasonable probability that the result reached by the jury would have been different.

This Court agrees with the trial court. There is no evidence that petitioner's counsel's performance was deficient. Since there is no evidence that the admission of the videotape was improper, the state courts' decisions were not an unreasonable application of clearly established federal law, nor were the state courts' decisions based on an unreasonable determination of the facts.

    **B.**    **The Audiotape**

Second, petitioner objects to the Magistrate's conclusion regarding whether petitioner was denied the right of counsel by the introduction of an audiotape, allegedly containing a

8

message on petitioner's mother's telephone answering tape from S.S. on March 6, 1995. During the trial, defense counsel expressed her doubts to the trial judge about the authenticity of this audiotape. The trial judge informed petitioner that defense counsel had such doubts and that he could have the opportunity to obtain new counsel. Petitioner declined to obtain new counsel and the audiotape was introduced into evidence through direct testimony of petitioner's mother. Petitioner now claims that he was denied the right of counsel because counsel failed to cross-examine S.S. with the audiotape.

Defense counsel's decision to not cross-examine S.S. with the audiotape is not reversible error. Defense counsel believed the audiotape to be unauthentic and likely fabricated. The audiotape was introduced into evidence through petitioner's mother, even though defense counsel chose not to cross-examine S.S. about the audiotape. Although other attorneys might have reached another conclusion about the value of cross-examining S.S. with regard to the audiotape, defense counsel's decision was "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly preferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.... Even the best criminal defense attorneys would not defend a particular client in the same way."). *See also Moss v. Hofbauer*, 286 F.3d 851, 864-65 (6th Cir. 2001) (holding that defense counsel's decision to not cross-examine a witnesses whose testimony she considered to be inherently unbelievable did not constitute a constitutionally deficient performance). The Court finds that defense counsel's performance was not deficient with respect to the audiotape.

9

### C. Closing Arguments

Next, petitioner objects to the Magistrate Judge's findings with respect to the ineffective assistance of counsel claim regarding defense counsel's closing argument during the penalty phase of the case. Relying on *Commonwealth v. Tamme*, 973 S.W.2d 13 (Ky. 1998), the trial court concluded that petitioner failed to show that defense counsel's closing argument amounted to ineffective assistance of counsel or that he was substantially prejudiced by his attorney's closing argument. In *Tamme*, the defendant claimed that he was denied effective assistance of counsel during closing arguments of the penalty phase because defense counsel conceded guilt. *Id.* at 39. The Kentucky Supreme Court noted, "An attempt to ingratiate a criminal jury by expressing respect for its guilty verdict in the hope of persuading it toward a more lenient sentence is a common strategy in penalty phase arguments." *Id.* at 39. As the trial court noted, not only did defense counsel concede petitioner's guilt, but she also discussed the human, caring side to his personality. Given that the Kentucky Supreme Court has approved such a strategy and that defense counsel asked the jury to consider petitioner's nurturing qualities, the Court concludes that defense counsel's performance was not deficient, nor did it prejudice petitioner.

### D. Hearsay Testimony

Last, petitioner objects to his attorneys' failure to object to the alleged hearsay testimony of Anita Capillo, the Director of Victim Services. Petitioner raised this error for the first time during his collateral attack on the judgment pursuant to RCr 11.42. The trial court and Court of Appeals concluded that this evidentiary issue is the type of issue that must be pursued in a direct appeal. Since petitioner failed to raise this issue on direct appeal, he was precluded from raising it in his RCr 11.42 motion. *See Brown v. Commonwealth*, 788 S.W.2d 500, 501 (Ky. 1990)

(finding that a litigant is barred from raising in a RCr 11.42 motion an issue that was either raised on direct appeal or could have been raised on direct appeal).

A petitioner procedurally defaults when he fails to exhaust all available state remedies (here, by failing to object or to ask the state high court to rule on the question), and the state court to which he would be required to petition would now find the claim procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In petitioner's case, RCr 11.42 allows a party to directly appeal and bring one collateral attack, after which all claims not brought on the direct appeal or in that collateral challenge are generally defaulted. *See* Ky. R. Crim. P. 11.42(3) ("The motion shall state all grounds for holding the sentence invalid of which the movant has knowledge. Final disposition of the motion shall conclude all issues that could reasonably have been presented in the same proceeding."); *Stamps v. Rees*, 834 F.2d 1269, 1274 (6th Cir.1987). The consequence of procedural default is that the petitioner is deemed to have forfeited his habeas claim.

In this habeas petition, petitioner states that he was denied effective assistance of counsel when his attorneys failed to object to Capillo's hearsay testimony. Thus, although petitioner procedurally defaulted on his evidentiary claim, he now collaterally attacks the judgment by asserting that his attorneys rendered ineffective assistance of counsel. During the course of his trial, multiple social workers and investigators made hearsay statements in an attempt to bolster S.S.'s testimony. The trial court recognized that before Capillo testified, three other witnesses testified about hearsay statements made by the victim after the rape took place. Petitioner's attorneys objected on numerous occasions to these witnesses' hearsay testimony. When Capillo testified about similar hearsay testimony from S.S., defense counsel chose not to object because

11

they had already made the proper objection regarding this issue with previous witnesses. The trial court noted that defense counsel's strategic reasoning was expressed during a side bar after objecting to one of the other witnesses' hearsay when she pointed out that she did not want to keep making objections over the same issue to avoid appearing difficult. (A386-87). Therefore, the state court was correct in finding that defense counsel's performance was not deficient, nor did it prejudice petitioner.

## IV. CONCLUSION

In conclusion, petitioner has failed to show that review of his claim by the Kentucky courts resulted in a decision that (a) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (b) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, petitioner's petition for a writ of habeas corpus should be denied. Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that:

(1) the Magistrate Judge's proposed findings of fact and recommendation [DE #13] is ADOPTED as and for the opinion of the Court;

(2) the respondents' motion to dismiss [DE #4] is GRANTED;

(3) the petitioner's objections [DE #14] are OVERRULED;

(4) petitioner's petition for a writ of habeas corpus [DE #1] is DISMISSED WITH PREJUDICE; and

(5)  judgment will be entered contemporaneously with this order.

This __26th__ day of May, 2005.

_KSF_

KARL S. FORESTER, SENIOR JUDGE